IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1046

Filed 15 July 2026

Robeson County, No. 25CV001805-770

SOUTHEASTERN REGIONAL PHYSICIAN SERVICES, Plaintiff,

v.

ALLISON L. SCOTT, FNP, and CHASTITY BENSON, NP, Defendants.

Appeal by Plaintiff from order entered 22 August 2025 by Judge Tiffany Powers in Robeson County Superior Court. Heard in the Court of Appeals 24 March 2026.

> *Cranfill Sumner LLP, by Benton L. Toups and Tammy L. Neil, for Plaintiff-Appellant.*

> *Murchison, Taylor & Gibson PLLC, by Andrew K. McVey, for Defendants-Appellees.*

GRIFFIN, Judge.

Plaintiff Southeastern Regional Physician Services appeals an order granting judgment on the pleadings after Defendants Allison L. Scott and Chastity Benson successfully argued Plaintiff's non-compete agreements were overly broad and unenforceable. Plaintiff argues the trial court erred because the non-compete agreements were temporary and reasonable restrictions, and the trial court's reliance on public interest doctrine was improper. We hold the non-compete agreements are

overly broad and unenforceable, and we decline to blue-pencil the challenged provisions.

## I.    Factual and Procedural History

Plaintiff is a wholly owned subsidiary of Southeastern Regional Medical Center and operates several primary and specialty care medical clinics. Defendant Scott and Benson are a licensed family nurse practitioner and licensed nurse practitioner, respectively. Plaintiff hired Scott on or about 17 February 2021 and hired Benson on or about 15 July 2023. Prior to employment, Plaintiff had both Defendants sign Provider Employment Agreements containing covenants not to compete. Scott's covenant not to compete contains the following language:

> [Defendant] agrees that during the term of employment and for a period of one (1) year following the termination of employment with [Plaintiff] for any reason (the "noncompetition period"), [Defendant] will not engage in the practice of Medicine or provide services similar to those provided under this Agreement as an employee, independent contractor, or in any other capacity, *for a competing Southeastern or other competing institutional health care providers within Robeson County* without the expressed, written consent of [Plaintiff].

(Emphasis added). In contrast, Benson's covenant not to compete reads:

> [Defendant] agrees that during the term of employment and for a period of one (1) year following the termination of employment with [Plaintiff] for any reason (the "noncompetition period"), [Defendant] will not engage in the practice of Medicine or provide services similar to those provided under this Agreement as an employee, independent contractor, or in any other capacity, *for a competing hospital or other competing institutional health*

> *care providers within 35 miles of any [of Plaintiff's] clinic[s]
> or facilit[ies]* without the expressed, written consent of
> [Plaintiff].

(Emphasis added). The Provider Employment Agreements also required Defendants to give ninety-days' notice to Plaintiff prior to resigning from their positions. During their time working for Plaintiff, both Defendants worked in Plaintiff's cardiology/cardiovascular clinic.

On 19 July 2024, Benson notified Plaintiff with her intent to resign, effective 18 October 2024. Similarly, on 1 August 2024, Scott notified Plaintiff with her intent to resign, effective 15 November 2024. Shortly thereafter, Southeastern Integrated Care, a primary care, mental health, and substance abuse treatment center, hired both Defendants.

Plaintiff filed its complaint against Defendants on 4 March 2025, alleging Defendants breached their respective covenants not to compete by providing medical services for Southeastern Integrated Care. Defendants answered Plaintiff's complaint on 16 May 2025 and moved to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and, alternatively, for judgment on the pleadings under Rule 12(c). Defendants argued in their answer: (1) Southeastern Integrated Care is neither a hospital nor an "institutional health care provider;" (2) the covenants not to compete are unenforceable because "they are more restrictive than necessary" as they wholly restrict Defendants' ability to practice medicine; and (3)

Plaintiff had no legitimate business interest in prohibiting Defendants from practicing medical specialties other than cardiology.

The trial court held a hearing on Defendants' motions on 11 August 2025. After considering the parties' briefs and arguments, the trial court found the covenants not to compete unenforceable because they were "too broad to constitute a reasonable protection of [Plaintiff's] business interest," they restricted Defendants' ability to practice medicine, and their enforcement "would create a substantial question of public harm to residents of North Carolina's largest and poorest county[,]" thus outweighing Plaintiff's business interest.

The trial court granted Defendants' motion for judgment on the pleadings and denied Defendant's motion to dismiss as moot. Plaintiff timely appeals.

## II. Analysis

Plaintiff raises three issues on appeal: (1) "[w]hether the trial court erred in granting [D]efendants' motion for judgment on the pleadings and dismissing [P]laintiff's complaint pursuant to N.C. R. Civ. P. 12(c)[;]" (2) "[w]hether the trial court erred in dismissing plaintiff's complaint in finding that the covenants are unenforceable[;]" and (3) "[w]hether the trial court erred in dismissing [P]laintiff's complaint in finding the public interest outweighs the business interest of the covenantee in enforcing the covenant."

Plaintiff argues the trial court erred by granting Defendants' motion for judgment on the pleadings because it provided valuable consideration to uphold the

covenants not to compete, and the covenants not to compete were reasonable. Plaintiff also argues the trial court's reliance on public interest doctrine was improper and, alternatively, if this Court holds the covenants not to compete are overly broad, this Court should "blue-pencil" to render the covenants not to compete reasonable.

We review a trial court's ruling on a motion for judgment on the pleadings de novo. *Barefoot v. Rule*, 265 N.C. App. 401, 403, 828 S.E.2d 685, 687 (2019). When presented with a motion for judgment on the pleadings, the trial court must view the facts and permissible inferences in the light most favorable to the nonmoving party and take all well-pleaded factual allegations as true. *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). All contravening assertions in the movant's pleadings are taken as false. *Id.* "All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion [for judgment on the pleadings]." *Id.*

A motion for judgment on the pleadings "should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Am. Bank & Trust Co. v. Elzey*, 26 N.C. App. 29, 32, 214 S.E.2d 800, 802 (1975) (internal citation omitted). The purpose of the motion is to "dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit[,]" leaving only the admitted material allegations and questions of law. *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499. "When the

pleadings do not resolve all the factual issues, judgment on the pleadings is generally [i]nappropriate." *Id.*

## A. Enforceability of Covenants

Covenants not to compete are valid and enforceable if they are: "(1) in writing; (2) reasonable as to terms, time, and territory; (3) made a part of the employment contract; (4) based on valuable consideration; and (5) not against public policy." *Triangle Leasing Co. v. McMahon*, 327 N.C. 224, 228, 393 S.E.2d 854, 857 (1990). [1]

Here, Plaintiff argues the elements of a valid covenant not to compete are met for both Covenants. Regarding the elements of writing, made as part of the initial employment agreement, and made with valuable consideration, we agree and dispense these arguments. *See id.*; *Precision Walls, Inc. v. Servie*, 152 N.C. App. 630, 636, 568 S.E.2d 267, 272 (2002) ("It is well established in North Carolina that the promise of new employment is valuable consideration and will support an otherwise valid covenant not to compete contained in the initial employment contract." (internal quotation marks and citation omitted)). We address the remaining elements.

---

[1] We note that our Court has used a similar five-element analysis in *Hartman v. W.H. Odell & Assocs., Inc.*, 117 N.C. App. 307, 311, 450 S.E.2d 912, 916 (1994). The *Hartman* test replaces element (5) with "designed to protect a legitimate business interest of the employer." *Id.* (citation omitted). We use the *Triangle Leasing Co.* test language instead because the protection of a legitimate business interest is a required consideration for determining whether a covenant not to compete is void against public policy, *see Phelps Staffing, LLC v. C.T. Phelps, Inc.*, 226 N.C. App. 506, 509, 740 S.E.2d 923, 927 (2013), and we are bound by decisions of our Supreme Court if our decisions are in conflict, *Emp. Staffing Grp., Inc. v. Little*, 243 N.C. App. 266, 271, n.3, 777 S.E.2d 309, 313 n.3 (2015). Further, "[i]t is well settled that the courts of a state will not lend their aid to the enforcement of a contract . . . [w]hen it violates public policy." *Std. Fashion Co. v. Grant*, 165 N.C. 453, 456, 81 S.E. 606, 607–08 (1914).

### 1. *Reasonability in Terms, Time, and Territory*

"The reasonableness of a restraining covenant is a matter of law for the court to decide." *Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 663, 158 S.E.2d 840, 843 (1968) (citation omitted). When evaluating reasonableness as to time and territory, we must consider the two elements together because "the two requirements are not independent or unrelated." *Farr Assocs., Inc. v. Baskin*, 138 N.C. App. 276, 280, 530 S.E.2d 878, 881 (2000). Though either element, standing alone, may be reasonable, the combined effect of both elements may be unreasonable. *Id.* "A longer period of time is acceptable where the geographic restriction is relatively small, and *vice versa*." *Id.* (citing *Jewel Box Stores*, 272 N.C. at 665, 158 S.E.2d at 844).

To properly consider the reasonableness of a territorial restriction, we must consider six factors:

> (1) the area or scope of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked; (4) the area in which the employee operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and his knowledge of the employer's business operation.

*Id.* at 281, 530 S.E.2d at 882 (citing *Hartman*, 117 N.C. App. at 312, 450 S.E.2d at 917). A territorial restriction is reasonable "only to the extent it protects the legitimate interests of the employer in maintaining [its] customers." *Manpower of Guilford Cnty., Inc. v. Hedgecock*, 42 N.C. App. 515, 523, 257 S.E.2d 109, 115 (1979). "Before a covenant can be found reasonably necessary for the protection of a

legitimate business interest, we hold that it is first necessary to find the employee, as a result of his employment, acquired intimate knowledge of the nature and character of the business which was not otherwise generally available to the public." *United Lab'ys, Inc. v. Kuykendall*, 322 N.C. 643, 650, 370 S.E.2d 375, 380 (1988) (citation omitted).

Here, Plaintiff argues the covenants not to compete were reasonable in both time and territory as well as, implicitly, in terms. Regarding the timing restriction, we agree a one-year restriction is reasonable. *See Farr Assocs.*, 138 N.C. App. at 280, 530 S.E.2d at 881 ("A five-year time restriction is the outer boundary which our courts have considered reasonable[.]"). We also hold the geographical restrictions of 35 miles and "within Robeson County" reasonable. *See Masterclean of N.C., Inc. v. Guy*, 82 N.C. App. 45, 50, 345 S.E.2d 692, 696 (1986) (holding a geographical restriction embracing the entire United States is "patently unreasonable"). However, we do not agree the terms are reasonable.

North Carolina courts have consistently held covenants not to compete are unenforceable when overly broad in scope. *E.g.*, *Henley Paper Co. v. McAllister*, 253 N.C. 529, 534–35, 117 S.E.2d 431, 434 (1960); *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 508–09, 606 S.E.2d 359, 362–63 (2004); *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 656–57, 670 S.E.2d 321, 327–28 (2009).

Here, the language of the covenants not to compete forbids Defendants from "engag[ing] in the practice of Medicine" or to provide substantially similar services to

those they provided for Plaintiff. This prohibition impermissibly limits Defendants' abilities to meaningfully engage in their careers. If Defendants were to comply with their covenants not to compete, they would both be required to stop any work remotely related to the practice of medicine or operation of a healthcare facility. This restriction is overbroad and unenforceable. *See Hartman*, 117 N.C. App. at 317, 450 S.E.2d at 920 (holding a non-compete agreement is overly broad when "rather than attempting to prevent [a] plaintiff from competing for [] business, it requires [a] plaintiff to have no association whatsoever with any business that provides [similar] services").

## 2. *Voidability Against Public Policy*

We would also hold the covenants not to compete void against public policy. When considering public policy, we "disfavor[] noncompetition agreements which hamper an individual's right to earn a livelihood unless the restriction protects a sufficient countervailing interest of the employer." *Phelps Staffing, LLC v. C.T. Phelps, Inc.*, 226 N.C. App. 506, 509–10, 740 S.E.2d 923, 927 (2013) (citation omitted). Employer rights must be balanced against the "undue hardship" of the employee:

> [E]ven where there is an otherwise permissible covenant not to compete: [t]he restraint is unreasonable and void if it is greater than is required for the protection of the promisee or if it imposes an undue hardship on the person who is restricted. Owing to the possibility that a person may be deprived of his livelihood, the courts are less disposed to uphold restraints in contracts of employment than to uphold them in contracts of sale.

*Starkings Ct. Rep'ing Servs. v. Collins*, 67 N.C. App. 540, 541–42, 313 S.E.2d 614, 615 (1984) (quoting *Wilmer, Inc. v. Liles*, 13 N.C. App. 71, 75, 185 S.E.2d 278, 281 (1971)). In the public policy analysis, we must consider "the right of the employer to protect, by reasonable contract with [its] employee, the unique assets of [its] business, a knowledge of which is acquired during the employment and by reason of it[.]" *Elec. S., Inc. v. Lewis*, 96 N.C. App. 160, 165, 385 S.E.2d 352, 355 (1989) (quoting *Kadis v. Britt*, 224 N.C. 154, 159, 29 S.E.2d 543, 546 (1944)). These unique assets include contacts and confidential information. *Id.* at 166, 285 S.E.2d at 355. In contrast, "when such proprietary interests of the employer are absent and the effect of a contract is merely to stifle normal competition, it is offensive to public policy in promoting monopoly at the public expense and is bad." *Phelps Staffing, LLC*, 226 N.C. App. at 510, 740 S.E.2d at 927 (citation modified). Covenants not to compete offend public policy when they impose a "greater restraint on the [employee's] ability to earn a living than was necessary to protect the [employer's] business interests." *Id.* (citing *Starkings Ct. Rep'ing Servs.,* 67 N.C. App. at 542, 313 S.E.2d at 616.).

Here, Plaintiff argues public interest doctrine should not apply to a Rule 12(c) analysis because the application of public interest doctrine is "inherently factual" and "involve[s] fact finding and submission of evidence in the context of motions for preliminary injunction[s] and summary judgment." Alternatively, Plaintiff argues the covenants not to compete are not contrary to public policy because they protect Plaintiff's legitimate business interests. Plaintiff's asserted business interests are

protection from adverse use of intimate knowledge of Plaintiff's business operations and protection of customer relationships. Plaintiff alleges it has lost patients to Southern Integrated Care after Defendants' departure. We hold Plaintiff's legitimate business interest does not sufficiently justify the bar to Defendants' ability to engage in the practice of medicine based on the pleadings; therefore, the case need not proceed to the fact finding and submissions of evidence for which Plaintiff argues.

We have previously held, "[t]o plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *VisionAIR, Inc.*, 167 N.C. App. at 510–11, 606 S.E.2d at 364 (citation modified). Here, Plaintiff does not plead a specific trade secret misappropriated by Defendants. Plaintiff generally pleads Defendants had access to Plaintiff's "practice management techniques and confidential information;" provide medical services "similar to those" provided for Plaintiff; and, due to Defendants' employment with Southeastern Integrated Care, Plaintiff has lost patients. Plaintiff also argues Defendants' previous association with Plaintiff "provided them with an opportunity to injure [Plaintiff] and its business." Absent allegations of misappropriated trade secrets Defendants know, Plaintiff cannot enforce an absolute bar to Defendants' practice of medicine. *Id.* at 511, 606 S.E.2d at 364 (holding "general allegations" that one's employment "has or will immediately engender misappropriation of trade secrets" combined with a failure "to

identify with any specificity the trade secrets allegedly misappropriated, mentioning only broad . . . categories" were "insufficient to state a claim for misappropriation of trade secrets" (citation omitted)); *see United Lab'ys, Inc.*, 322 N.C. at 650, 370 S.E.2d at 380 ("Before a covenant can be found reasonably necessary for the protection of a legitimate business interest, we hold that it is first necessary to find the employee, as a result of his employment, acquired intimate knowledge of [a confidential] nature and character of the business which was not otherwise generally available to the public.").

In contrast, we agree Plaintiff has a legitimate business interest in protecting its client relationships. *United Lab'ys, Inc.*, 322 N.C. at 651, 370 S.E.2d at 381 (first citing C.T. Drechsler, Annotation, *Enforceability of Restrictive Covenant, Ancillary to Employment Contract, as Affected by Territorial Extent of Restriction,* 43 A.L.R.2d 94, § 24 (1955); and then citing C.T. Drechsler, Annotation, *Enforceability of Restrictive Covenant, Ancillary to Employment, as Affected by Duration of Restriction,* 41 A.L.R.2d 15, § 14 (1955)). North Carolina has adopted a "customer-contact" theory which recognizes "[t]he greater the employee's opportunity to engage in personal contact with the employer's customer, the greater the need for the employer to protect these customer relationships." *Id.* at 651, 370 S.E.2d at 381. The theory is most applicable when "the employee is the sole or primary contact between the customer and the employer." *Id.*

Although we hold Plaintiff's customer-contact interest legitimate, we hold it does not sufficiently justify the bar to Defendants' ability to engage in the practice of medicine. *See Iredell Digestive Disease Clinic, P.A. v. Petrozza*, 92 N.C. App. 21, 27, 373 S.E.2d 449, 453 (1988) ("A covenant not to compete between physicians is not contrary to public policy if it is intended to protect a legitimate interest of the covenantee *and* is not so broad as to be oppressive to the covenantor or the public." (emphasis added) (citation omitted)).  Defendants were not the sole contacts between Plaintiff and its patients, and Plaintiff does not plead Defendants were the primary contacts between Plaintiff's patients and Plaintiff.  The mere loss of patients after Defendants' departure is not sufficient to justify precluding Defendants' practice of medicine. *See Elec. S., Inc.,* 96 N.C. App. at 165–66, 385 S.E.2d at 355 (stating "[t]he equitable balance between conflicting interests of employer and employee takes into account the right of the employer to protect, by reasonable contract with its employee, the unique assets of its business, a knowledge of which is acquired during the employment and by reason of it," including "customer contacts" and "confidential information," and "to this employer's right must be added the condition that the contract does not impose unreasonable hardship on the employee" (citation modified)).

We hold the covenants not to compete place an undue hardship on Defendants' ability to meaningfully engage with their careers and are too broad to protect Plaintiff's legitimate business interests. *Starkings Ct. Rep'ing Servs.*, 67 N.C. App.

at 541–42, 313 S.E.2d at 615.  Therefore, on balance, we hold the trial court did not err in finding the covenants not to compete unenforceable.[2]

## B. Blue-Pencil Doctrine

Plaintiff argues, alternatively, this Court may "blue[-]pencil" the phrase "practice of Medicine" in both covenants not to compete to render the provisions reasonable.

"The blue-pencil doctrine is a doctrine in equity, designed to save a contract where particular restrictions are deemed unreasonable and unenforceable." *Rel. Ins., Inc. v. Pilot Risk Mgmt. Consulting, LLC*, --- N.C. ---, ---, 929 S.E.2d 893, 914 (2026) (citing *Welcome Wagon Int'l, Inc. v. Pender*, 255 N.C. 244, 248, 120 S.E.2d 739, 742 (1961)).  "Generally, under the blue-pencil doctrine, courts 'will sever unreasonable, divisible portions and then enforce the reasonable parts that remain, usually without rewriting the covenant by adding, changing, or rearranging terms.'"  *Id.* (quoting 6 Richard A. Lord, *Williston on Contracts* § 13:31 (4th ed. 2025)).  Courts may not, however, revise or rewrite the overly broad provisions.  *Whittaker Gen. Med. Corp. v. Daniel*, 324 N.C. 523, 528, 379 S.E.2d 824, 828 (1989).

---

[2] We also recognize the trial court found "the enforceability of the covenants would create a substantial question of public harm to residents of North Carolina's largest and poorest county."  Even assuming Robeson County is North Carolina's "largest and poorest county," we hold the trial court's taking of judicial notice of this fact inconsequential because we hold the covenants not to compete are void against public policy for the reasons stated above.

"Under a liberal blue-pencil standard, employers are encouraged to create ominous covenants, knowing that if the provisions are contested, courts will modify the agreement to make it enforceable—all the while maintaining the added benefit that departing employees may adhere to the onerous covenant without challenge." *Rel. Ins., Inc.*, --- N.C. at ---, 929 S.E.2d at 914.[3]  In contrast, North Carolina courts adopt a strict blue-pencil doctrine, allowing "[o]nly those separable or divisible covenants [to] be fairly stricken out.  This is rooted in the notion that a natural reading of [the] contract would indicate that the parties separately intended to agree to each separable covenant." *Id.*  Accordingly, the strict blue-pencil doctrine "does not allow courts to surgically excise language." *Id.* at ---, 929 S.E.2d at 915.

Here, Plaintiff requests this Court blue-pencil the covenants not to compete in the following ways:

**Defendant Scott's Covenant Not to Compete:**

[Defendant] agrees that during the term of employment and for a period of one (1) year following the termination of employment with [Plaintiff] for any reason (the "noncompetition period"), [Defendant] will not ~~engage in the practice of Medicine or~~ provide services similar to those provided under this Agreement as an employee, independent contractor, or in any other capacity, for a competing Southeastern or other competing institutional

---

[3] We recognize our Supreme Court's opinion in *Relation Ins., Inc.* was released after the submission of the Parties' briefs.  Although neither party filed a memorandum of additional authority including *Relation Ins., Inc.*, this opinion is binding on this Court and the trial courts of North Carolina.  *See Snipes v. TitleMax of Va., Inc.*, 285 N.C. App. 176, 184, 876 S.E.2d 864, 870 (2022) ("Of course, we are . . . bound by decisions of our Supreme Court[.]")); *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

health care providers within Robeson County without the expressed, written consent of [Plaintiff].

**Defendant Benson's Covenant Not to Compete:**

[Defendant] agrees that during the term of employment and for a period of one (1) year following the termination of employment with [Plaintiff] for any reason (the "noncompetition period"), [Defendant] will not ~~engage in the practice of Medicine or~~ provide services similar to those provided under this Agreement as an employee, independent contractor, or in any other capacity, for a competing hospital or other competing institutional health care providers within 35 miles of any [of Plaintiff's] clinic[s] or facilit[ies] without the expressed, written consent of [Plaintiff].

"Since [Plaintiff does] not request blue-penciling of a separable, divisible provision from an otherwise enforceable provision, blue-penciling cannot apply." *Id.*

### III.   Conclusion

The trial court did not err in finding the covenants not to compete overly broad and unenforceable or in granting Defendants' motion for judgment on the pleadings, and we decline to blue-pencil the challenged provisions.

AFFIRMED.

Judge WOOD concurs.

Chief Judge DILLON dissents by separate opinion.

No. COA25-1046 – *Se. Reg'l Physicians Servs. v. Scott*

DILLON, Chief Judge, dissenting.

Defendants are nurses, each hired by Plaintiff and each signing a non-compete agreement as a condition of employment.

I agree with the majority that the prohibition in their respective covenants prohibiting Defendants from "engaging in the practice of medicine" is over broad and, therefore, unenforceable. However, for the reasoning below, I conclude *other* limitations in the covenant are not over broad. Further, I conclude the over broad portion can be properly struck, thus allowing the "non- over broad" portions to stand. (I question certain jurisprudence suggesting the trial court has discretion whether to strike offending language, as I believe this should be a question of law. But even if it is a discretionary call, the call should not be made at a Rule 12(c) hearing.)

I agree with the majority that Defendants may, otherwise, be able to show the covenants restricting their ability to serve Robeson County as nurses – a vital part of the county's medical community – *may* violate public policy. And it may be shown through discovery these covenants are, indeed, unenforceable. However, I conclude Plaintiff's complaint should survive at this early stage, that the trial court should not have granted Defendants judgment on the pleadings. Accordingly, I respectfully dissent.

Analysis

A.     Blue Penciling

Our Supreme Court has recently reiterated long-standing North Carolina precedent that courts will not rewrite language in a contract that we conclude is unenforceable. *Relation. Ins., Inc. v. Pilot Risk*, __ N.C. __ (2026).

For instance, in the present case, I agree with the majority that the 35-mile range is a reasonable area. But assume the covenant at issue stated that Defendants could "not work as nurses anywhere in the United States". Assume, further, we were to conclude a 35-mile distance was the outer limit of a reasonable restriction. We would, thus, strike the covenant, thereby relieving Defendants from the covenant altogether. Our case law would not allow us to change "United States" to "a 35-mile distance".

However, our Supreme Court also reiterated long-standing North Carolina precedent that there are circumstances where a trial court may enforce the non-offensive restrictions in a restrictive covenant which otherwise contains offensive restrictions. For instance, assume the contract in my example above contains several clauses, as follows:

> Defendants may not work as nurses anywhere in the United States;
> Defendants may not work as nurses in North Carolina;
> Defendants may not work as nurses within 100 miles of Plaintiff's clinic;
> Defendants may not work as nurses within 35 miles of Plaintiff's clinic.

*See Beverage Sys. v. Associated Bev.*, 368 N.C. 693, 696-97 (2016); *Welcome Wagon v. Pender*, 255 N.C. 244, 248 (1961). In this case, the trial court could strike the first three lines, leaving the fourth as valid and enforceable.

However, our Supreme Court has also stated that blue penciling is only allowed where the offending provision is "a separable, divisible provision from an otherwise enforceable provision." *Relation Ins.*, __ N.C. at __.

In the present case, we are faced with whether the offending provision, prohibiting Defendants from "the practice of Medicine", is subject to blue penciling from the remainder of the same sentence in the covenant which prohibits Defendants from "provid[ing] services similar to those provided" under their respective employment agreements with Plaintiff.

Our Supreme Court has essentially held that it is permissible for a trial court to strike offending language - *even within the same phrase* - from non-offending language. For instance, in one case our Supreme Court was faced with a provision which prohibited a former employee from the "business of manufacturing, selling, renting, or distributing" certain goods, where the former employer was not in the business of manufacturing. *Whittaker General v. Daniel*, 324 N.C. 523, 528 (1989). The employer sued when the employee began working for a competitor selling goods. The employee tried to avoid the covenant altogether by pointing to the word "manufacturing", restricting his ability to manufacture for another company, as being over broad. Our Supreme Court rejected that argument, holding the word "manufacturing" was severable from the remainder of the sentence and allowed the former employer to collect damages for the former employee's actions in "selling". *Id.*

However, in *Relation Ins.*, our Supreme Court in its recent decision seemingly held that a covenant was unenforceable *in its entirety* though the covenant could be read as enforceable by simply striking through the offending language. The Court, though, seemed to base its holding on the fact that it would require language in over forty different places to be struck in order to make the remainder enforceable. *Relation Ins.* __ N.C. at __.[4]

Here, though, the pleadings do not show that a trial court would have to engage in blue penciling except in a few places and thus would not run counter to our Supreme Court's opinion in *Relation Ins.*. Therefore, I conclude the trial court could engage in blue penciling to strike the offending language.

B.      Public Policy

The majority also holds the provision violates public policy as Defendants are nurses working in the medical field. It may be the provision violates public policy. However, I do not believe this has been shown at the pleading stage. For instance, there is no evidence showing whether there is a shortage of nurses in Robeson County. *See, e.g., Statesville Medical v. Dickey*, 106 N.C. App. 669, 673 (1992). In

---

[4] Though not relevant to the analysis in this current matter, I note that I read *Relation Ins.* as moving the goal post a little, thus making the question of whether a non-compete contract can be blue-penciled less certain under our law. It could be argued that the blue-penciling requested by Relation Insurance in that case was not that overwhelming, as the request largely required the trial court to blue pencil the same phrase, which happened to occur some forty times in the agreement at issue.

other words, Defendants may be able to show through discovery that the provision violates public policy as a matter of law, therefore entitling Defendants to summary judgment at a later stage of this litigation. However, I see nothing in the pleadings which entitle Defendants judgment at this stage.

C.      Abuse of Discretion vs, De Novo Standard

Though not an issue raised in this appeal, I think it important to note another issue that arises in the context of blue-penciling.

There is case law from our Court which suggests that, where blue penciling may be allowed, it is within the trial court's *discretion* whether to actually engage in blue pencil offending language. *See, e.g., Hartman v. W.H. Odell*, 117 N.C. App. 307, 317 (1994) (holding that "[a] court at most *may choose* to enforce a distinctly separable part of a covenant in order to render the provision reasonable" (emphasis added)). That is, it is within the trial court's discretion to decide whether or not parties to a contract capable of being blue penciled are bound by the non-offending language in that contract. This may be because the blue pencil doctrine has been viewed as a "doctrine of equity". *See Relation Ins.*, __ N.C. at __.

In sum, it appears the law in North Carolina is that it is a *question of law* whether a provision is able to be blue penciled, e.g., whether the offending provision is separable. *Then*, in cases where an offending provision is separable as a matter of law, it is *within a trial court's discretion* whether to allow an employer to enforce the

5

reasonable provisions by engaging in the "blue penciling" process. Allowing a trial court discretion whether or not to enforce provisions in a contract creates uncertainty in our society between contracting parties. It could be argued that our law should provide for more certainty. That is, one could argue the matter should be simply a question of law, as it is a matter of contract interpretation, where the rights of the parties would be the same no matter the judge. *See, e.g. Morrell v. Hardin Creek*, 371 N.C. 672 (2018) (applying a *de novo* standard in reviewing contract language).

Our Supreme Court did not need to resolve this issue in its recent *Relation Ins.* opinion; and, therefore, the Court did not render any opinion on our precedent on this issue.

In any event, in the present case, my vote is the same whether a trial court has discretion or not, based on the posture of this case. Specifically, the trial court *at this stage of the litigation* was only to address the pleadings, that is, to address the legal question whether the offending provision was severable.